## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

#### BECKLEY DIVISION

**RACHEL KARLEESE CRAWFORD,**

      **Plaintiff,**

**vs.**                                                   **CIVIL ACTION NO. 5:20-CV-00372**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered June 3, 2020 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings and Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF Nos. 17, 18) and Defendant's Brief in Support of Defendant's Decision (ECF No. 20).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or alternatively, remand (ECF No. 17); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 20); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Rachel Karleese Crawford, (hereinafter referred to as "Claimant"), protectively filed her application for benefits on June 12, 2017[1] (Tr. at 37, 225-226) because of bipolar disorder, depression, and anxiety (Tr. at 243). Her claim was initially denied on August 1, 2017 (Tr. at 122-128, 129) and again upon reconsideration on October 26, 2017 (Tr. at 130-137, 138). Thereafter, Claimant filed a written request for hearing on November 16, 2017 (Tr. at 178-180).

An administrative hearing was held on April 11, 2019 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ"). (Tr. at 52-83) On May 8, 2019, the ALJ entered an unfavorable decision. (Tr. at 34-51) On July 1, 2019, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 222-224) The ALJ's decision became the final decision of the Commissioner on April 3, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On June 2, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 11, 12) Subsequently, Claimant filed a Motion for Judgment on the Pleadings and a Memorandum in Support of Judgment on the Pleadings (ECF Nos. 17, 18), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 20). Consequently, this matter is fully briefed and ready for resolution.

---

[1] Though Claimant alleged an onset date of January 1, 2015 (Tr. at 243), pursuant to 20 C.F.R. § 416.335, the relevant period in this case begins in June 2017, the month of Claimant's application date (Tr. at 37, 225-226, 227-233).

**Claimant's Background**

Claimant was 21 years old as of the application date and defined as "younger person" throughout the underlying proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 45) Claimant left school in the eleventh grade due to anxiety, but later obtained her GED (Tr. at 59). Claimant has worked for the last four years at Hinton Newspaper scanning paperwork or typing for no more than two hours per day; her mother is the manager at the newspaper (Tr. at 60-61). Given Claimant's work history, the ALJ determined she did not have any past relevant work (Tr. at 45).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. § 416.920.  If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." Id. § 416.920a(a).  First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. § 416.920a(c).  That section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

4

which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart P of part 404 of this chapter for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter.

(4) When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in

reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

**Summary of ALJ's Decision**

At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since June 12, 2017, the application date. (Tr. at 39, Finding No. 1) At the second inquiry, the ALJ found that Claimant had the following severe impairments: bipolar disorder; depression; and anxiety. (Id., Finding No. 2) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 40, Finding No. 3) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> She is capable of frequent interaction with co-workers and supervisors but never with the public or crowds. She is capable of simple, routine, repetitive work that is not an assembly line or production rate pace. She is capable of tolerating a few changes in the work environment, which I define as 3-4 changes per workday or work shift.

(Tr. at 41, Finding No. 4)

At step four, the ALJ found Claimant has no past relevant work. (Tr. at 45, Finding No. 5) In addition to the transferability of job skills being a non-issue, Claimant's age, education, work experience and RFC, the ALJ then determined that there were other jobs that existed in significant numbers in the national economy that Claimant can perform. (Id., Finding Nos. 6-9) Finally, the ALJ determined Claimant had not been under a disability since the application date of June 12, 2017. (Tr. at 46, Finding No. 10)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that that the ALJ erred in several respects: (1) that the ALJ made a factual finding error concerning Claimant's mental health treatment record; (2) that the ALJ's RFC assessment is not supported by substantial evidence because it fails to acknowledge Claimant's obvious work accommodations, Claimant's impairments in attention and concentration, and lacks sufficient explanation for judicial review; (3) that the ALJ provided an inadequate consideration or analysis of Claimant's treating psychiatrist's opinions which were supported by the evidence of record; and (4) that the ALJ that the ALJ failed to accommodate Claimant's impairment in concentration in the RFC assessment and/or failed to explain why such an accommodation is unnecessary. (ECF No. 18 at 8-17) Claimant requests this Court to remand this matter. (Id. at 17)

In response, the Commissioner asserts that Claimant failed to submit evidence in a timely manner to the ALJ and has shown no good cause for that failure; however, the ALJ did not rely on the perceived gap in mental health treatment in denying her claim, and regardless, the additional evidence submitted to the Appeals Council does not demonstrate a reasonable probability that it would have changed the outcome of the decision. (ECF No. 20 at 4-8) The ALJ's RFC assessment is supported by substantial evidence, because it accommodates Claimant's limitations in concentration as well as acknowledges the nature of Claimant's work; the ALJ fully considered Claimant's treating physician's observations as well as Claimant's own statements concerning her concentration and attention issues and provided a logical explanation for the RFC determination that allows for judicial review. (Id. at 8-14) The Commissioner argues the ALJ appropriately considered Claimant's treating physician's opinions pursuant to the pertinent Regulations, and explained how they were not supported by or consistent with the evidence of record. (Id. at 14-18)

Finally, the Commissioner contends the RFC assessment accommodates Claimant's impaired concentration and attention and complies with recent legal authority. (<u>Id</u>. at 18-20) The Commissioner states that substantial evidence supports the final decision and asks this Court to affirm. (<u>Id</u>. at 20)

## <u>The Relevant Evidence of Record</u>[2]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

<u>The Medical Record:</u>

In November 2015, Claimant suffered a mental breakdown resulting in hospitalization at Beckley Appalachian Regional Hospital; she was discharged with diagnoses of bipolar I disorder and anxiety disorder with notations of delirium due to acute mania. (Tr. at 42, 43, 44, 45, 320-321)

Since then, the record shows that Claimant received ongoing treatment from Appalachian Psychiatric Services, principally from Ahmed Faheem, M.D., psychiatrist. (Tr. at 43, 44, 376-384, 423-435, 441-449) Dr. Faheem consistently found that Claimant's attention and concentration were impaired, but otherwise determined her mental status examinations normal. (Tr. at 43, 430, 431) Claimant was treated on an outpatient basis with medication management for her symptoms. (Tr. at 43, 44, 376-384, 423-435, 441-449)

Treatment notes from July 2016 indicated Claimant reported doing okay; that her medications were working; that her mood swings under control; that she denied any major issues, concerns or problems, hallucinations, delusions, or suicidal ideation. (Tr. at 43, 430) By December 2016, treatment records indicate no changes, and her medications were unchanged. (Tr. at 43, 431)

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

By April 2017, although Claimant's lithium levels were low, she continued to report doing well. (Tr. at 43, 432) By July 2017, she reported no changes. (Tr. at 43, 434)[3]

From October to December 2018, Claimant received psychotherapy sessions at Appalachian Psychiatric Services with Daniel Mink, LPC, and presented with an anxious mood, restricted and guarded affect, but without suicidal or homicidal ideation. (Tr. at 43, 441-449) In December 2018, Claimant presented with her mother and reported that things were not going well; that she experienced mood fluctuations and difficulty being around others; that her mother had to supervise her at work lest she be unable to handle the job; and she endorsed some auditory hallucinations, but was alert, well oriented and cooperative. (Id.) Dr. Faheem observed Claimant was irritated, but not agitated; he also found that her lithium levels were low and adjusted her medications and recommended a one-month follow up. (Id.)[4]

The Opinion Evidence:

At the initial and reconsideration levels of review, the state agency psychological consultants opined Claimant's mental impairments were nonsevere (Tr. at 44, 122-128, 130-137).

On January 14, 2019, Dr. Faheem opined that since he began treating her in May 2015, Claimant's impairments met or medically equaled Listing 12.04 or 12.06; he noted marked limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace, with moderate limitation in repeated episodes of decompensation of extended duration. (Tr. at 44, 436-440) He noted Claimant seemed guarded and withdrawn and assessed she had problems with functioning, holding a job, concentration problems in focusing,

---

[3] After this date, the ALJ noted that the record indicated that Claimant "did not follow up at Appalachian Psychiatric Services for more than a year, or until October 2018" (Tr. at 43, 443).

[4] The ALJ noted that "[t]here were no additional medical records beyond this date for consideration." (Tr. at 43)

and in handling stress. (Id.) Dr. Faheem noted further that Claimant had major problems with mood fluctuations and getting paranoid, and despite receiving treatment with individual counseling sessions, her progress was limited. (Tr. at 438) He also noted that Claimant's mother "was having to watch her closely", and that Claimant "was under her mother's constant supervision." (Id.) He indicated Claimant's symptoms can be "somewhat" improved with treatment, but "very limited" given her continued problems with functioning and with handling employment; she had not "done well and her medications had to be adjusted at her last visit." (Tr. at 438-439)

Medical Records Submitted to Appeals Council:[5]

In October 2017, Claimant reported that she was doing about the same as she had reported in July, still having problems with concentrating and focusing, and although she was disappointed in her application for disability being denied, she stated she is trying to do the best she can and planned to appeal. (Tr. at 113) She reported that she was still working at the newspaper, but she could not cope with it, despite it being "not much of a job anyway", and that she cannot handle any full-time job "at this time." (Id.) She was attempting to take her lithium as prescribed, and on a daily basis, "[o]therwise, she is doing okay." (Id.) On examination, Claimant was alert, well oriented, and cooperative; her attention and concentration impaired; and she denied suicidal or homicidal ideation, hallucinations, or delusions. (Id.) She was instructed to return in three months. (Id.)

In January 2018, Claimant reported that she continued to do well on her current medications and that her lithium was "working well" and she was sleeping and eating well. (Tr. at

---

[5] Claimant references treatment notes from Appalachian Psychiatric Services dated July 26, 2017, October 8, 2017, January 31, 2018, May 7, 2018, September 11, 2018 (ECF No. 18 at 8; citing Tr. at 112-121), and a treatment note dated May 14, 2015 (Id.; citing Tr. at 88). It is noted, however, that with regard to the treatment note dated July 26, 2017 (Tr. at 112), the ALJ had already considered this evidence in her written decision (see Tr. at 43, 434).

114) Her mood was stable, she had no concerns or complaints and her mental status examination was unremarkable. (Id.) In May 2018, Claimant's mental status examination was again unremarkable; she remained stable on her current medication regimen. (Tr. at 117) In September 2018, Claimant reported that she ran out of her medication for two weeks and was struggling; she stated that she feels "that the medications were working well for her when she was taking them." (Tr. at 119) Her mood was stable, and she had no additional concerns or complaints (Id.); her mental status examination was unremarkable (Tr. at 120).

**The Administrative Hearing**

Claimant Testimony:

Claimant lives with her son in an apartment, and she has a sister that lives in the same apartment building; before that, she lived with her mother and five other siblings. (Tr. at 62, 76-77) Her mother lives about 15 minutes away from her. (Tr. at 77) Claimant explained that she got her own place because her mother is "over-protective" of her. (Tr. at 62) Claimant stated that she is primarily responsible for getting her son to and from school, and at times her sister will take him; her mother and sister will help Claimant with her son about once or twice a month. (Tr. at 74) Claimant will prepare simple meals for her son, such as soup or sandwiches; she has forgotten to turn off the stove, "so it's a little scary." (Tr. at 75) She can help her son with his homework. (Id.) Claimant is also primarily responsible for driving her son to his doctor's appointments. (Tr. at 77)

Claimant testified that she works from ten to twelve daily, sometimes less on some days. (Tr. at 61) She explained that she got her job because her mother gave it to her, and she understands Claimant's situation. (Tr. at 62) She indicated that the two hours she does work is "a little

11

overwhelming" and that there were times that her mother had to take over for her because she was fatigued. (Tr. at 77) After work, she will go home and eat, and probably sleep until it is time to pick her son up from school. (Tr. at 75)

Claimant testified that she had been going to counseling for her mental health issues since the age of 12. (Tr. at 62-63) Claimant testified that she experienced significant mood swings, but admitted that her medication helps. (Tr. at 63) She said that she is depressed most of the time and that she is "not really in control of my thoughts; it's racing thoughts that are negative." (Id.) She also has paranoid thoughts – she does not like to be around a lot of people, she does not like to make eye contact, and she does not take criticism well. (Tr. at 64) She related significant abuse when she was younger, and feels that may be the source of her issues with trust and paranoia. (Tr. at 66) She also stated that she has issues with depression, which can last for about a month, but she may feel happy for about a week. (Tr. at 68) She testified that she has days where it is difficult for her to get out of bed and will sleep more than normal. (Id.) On those days, she misses work and does not leave the house. (Tr. at 68-69) When she misses work, her mother will do her job for her. (Tr. at 69)

Claimant also testified that she experiences anxiety attacks, when she finds it "harder to breathe"; she said they "can happen from nothing" and that her body feels hot, her palms get sweaty, and her heart feels like its racing. (Tr. at 69-70) She tries to calm herself down by taking deep breaths; she also practices yoga, which helps a little. (Tr. at 71) Claimant admitted that medications scare her, because she feels they were the reason for her prior breakdown in 2015; she described side effects from lithium, including tiredness, frequent urination, hallucinations, and sleeplessness. (Tr. at 72)

Vocational Expert ("VE") Testimony:

When asked a hypothetical question with Claimant's profile and the controlling RFC, *supra*, the VE testified that the individual would be capable of performing the work in the cleaner occupations and as a packager, at the heavy exertional levels; a laundry worker and other cleaner jobs at the medium levels; and price marker and sorter inspecting occupations at the light level. (Tr. at 79-80) The VE further testified that should the individual be off task for 15 percent or more of a workday or absent for two or more days from work a month, then there would be no jobs for such an individual. (Tr. at 80-81)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

    <u>Additional Evidence Submitted to Appeals Council:</u>

    Five to seven months after entry of the ALJ's decision, Claimant submitted to the Appeals Council additional medical records which filled in the gaps in treatment noted by the ALJ.[6] (Tr. at 8-20, 84-121) As noted by the Commissioner (see, ECF No. 20 at 5, n.3), pursuant to the Regulations, a claimant bears the responsibility to inform the ALJ or otherwise submit all evidence no later than five business days before the hearing. 20 C.F.R. § 416.935(b). Claimant's counsel did not advise of any outstanding records that had not yet been exhibited.[7] (Tr. at 56-57) Nevertheless, as noted *supra*, Claimant argues that additional medical evidence warrants consideration under 20 C.F.R. §§ 416.1435, 416.1470, as there is a reasonable probability that it would change the outcome of the unfavorable decision. Where additional evidence is not new, material, does not relate to the period on or before the hearing decision, does not create a reasonable probability that it would change the outcome of the case, and there is no good cause for failure to submit the evidence earlier, the Appeals Council will issue a notice explaining why the

---

[6] As noted *supra*, the ALJ observed there were no treatment records from July 2017 to October 2018 and no additional medical records beyond December 2018. (Tr. at 43)

[7] Since the administrative hearing, Claimant's prior attorney retired (Tr. at 22), but Claimant obtained new counsel for her appeal to the Appeals Council and to this Court (Tr. at 33). To the extent that Claimant is asserting that the change in representation constitutes "good cause" for failure to submit the additional medical records, it is clear that pursuant to 20 C.F.R. § 416.1470(a)(5), this does not constitute "good cause", and Claimant does not endorse any of the enumerated reasons that support a finding of "good cause".

evidence was not accepted and advise a claimant of her right to file a new application. Id. § 416.1470(c).[8]

In its April 3, 2020 Notice, the Appeals Council not only informed Claimant of these governing Regulations, but also explicitly stated that records dated May 15, 2015 to May 7, 2018[9] did not show a reasonable probability of changing the outcome of the decision, and that records dated September 13, 2019 were unrelated to the period at issue. (Tr. at 1-2) The undersigned notes that while the Appeals Council correctly determined some of the unexhibited records **are dated** September 13, 2019 (Tr. at 9-20), some of these records are **not** actually **unrelated** to the period at issue: the "date of service" for certain records indicate Claimant was seen on February 8, 2019, March 21, 2019, and May 8, 2019 (Tr. at 15-20), and the "date of counseling" for certain records indicated she attended counseling sessions on June 6, 2019, June 19, 2019, and June 27, 2019 (Tr. at 9-14). Clearly, the counseling records are unrelated to the relevant period, as they post-date the May 8, 2019 decision. (see, Tr. at 2) With respect to the treatment notes that fall within the relevant period, from the undersigned's review of this evidence, these additional medical records do not demonstrate anything "new", "material", and that would have a "reasonable probability" of changing the outcome in this case pursuant to Section 416.1470.

Moreover, although it is true that the ALJ mentioned the lapse in treatment between July 2017 and October 2018, and that there were no more treatment records beyond December 2018, the ALJ's decision does not appear to rely on this lack of evidence or include any adverse

---

[8] As noted *supra*, in terms of her application for SSI, the relevant period is from the application filing date of June 12, 2017 through the date of the decision, May 8, 2019. (Tr. at 2, 46-47); see also, 20 C.F.R. §§ 416.335, 416.340.

[9] It is unclear if the Appeals Council acknowledged the treatment note dated September 11, 2018 (Tr. at 119-121), however, given the provider's observations therein, as noted *supra*, it is highly unlikely this evidence would have warranted remand under 20 C.F.R. § 416.1470.

inferences from same. Instead, the ALJ emphasized Claimant's "routine outpatient mental health treatment and her self-reported activities of daily living" as the driving force behind the unfavorable decision. (Tr. at 42-43) In addition, the ALJ noted Claimant's independence numerous times throughout the written decision: that she takes care of her son, takes him to school and to medical appointments, and helps him with his homework; that she can drive; that she works at Hinton Newspaper since 2016, performing scanning and typing activities for two hours a day; that she shops; that she lives in an apartment on her own; that she manages her own finances, pays bills, handles a savings account and checkbook; that she cooks, performs household chores, maintains personal hygiene and grooming; that her mother and sister help her out one to two days a month with her child; that she was in a relationship and engaged; and that despite dropping out of school in eleventh grade, she obtained her GED. (Tr. at 40, 41, 42, 43, 44, 45, 46) Ultimately, the ALJ concluded that in addition to these factual findings:

> since the application date, June 12, 2017, the undersigned notes that the claimant has required only routine follow up with her mental health treating source for medication management of symptoms. Moreover, her symptoms appear to be relatively well controlled with medications and counseling when she is compliant with treatment. Accordingly, the collective record is inconsistent with the claimant's allegations of disabling limitations.

(Tr. at 44) Significantly, the ALJ recognized that the treatment notes confirm what she had found persuasive – that Claimant's mental status examinations remained unremarkable, that she responded well to treatment, and that her symptoms were treated conservatively with medication. Indeed, the additional evidence submitted after the ALJ issued her decision underscores her findings and conclusion.

Accordingly, the undersigned **FINDS** that to the extent Claimant argues that the additional evidence is new, material and there is a reasonable probability of changing the outcome of the

ALJ's decision is without merit, notwithstanding the fact that "good cause" for failing to timely provide the information relevant to the period at issue was never demonstrated. The undersigned further **FINDS** the Appeals Council properly evaluated the evidence submitted after the ALJ's decision and found it did not provide a basis for remand.

<u>Evaluation of Medical Opinion Evidence:</u>

Because Claimant takes issue with the ALJ's consideration of her treating psychiatrist's opinion evidence, as a practical matter it is best to address the pertinent legal standard concerning evaluation of such evidence prior to discussing the ALJ's RFC assessment. As noted *supra*, Claimant basically argues that her psychiatrist determined she met Listing criteria, and/or found that she exhibits sufficient functional deficits that she is effectively disabled. (ECF No. 18 at 13-16)

In this case, the ALJ appropriately applied the regulatory framework pursuant to Section 404.1520c to claims filed after March 27, 2017: "[a]s for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any administrative medical finding(s) or medical opinion(s), including those from your medical sources." (Tr. at 44) It is also important to recognize that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. § 416.946(c); <u>see</u> <u>Felton-Miller v. Astrue</u>, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). In addition, the applicable Regulations provide that a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work

activity or adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at § 416.913(a)(5).

In this case, the ALJ properly applied Section 416.920c, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, as noted by the ALJ herein, *supra*, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. § 416.920c(a). Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. § 416.920c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered "the most important factors" of supportability and consistency. Id. § 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. § 416.920c(b)(2)-(3).

With regard to the opinion evidence, the ALJ first addressed the state agency psychological consultants' opinions, and explicitly found them inconsistent with the record, because the ALJ found Claimant's mental impairments severe, as she clearly required "ongoing treatment for bipolar, anxiety and depressive disorders." (Tr. at 44, 376-384, 423-435, 441-449) The ALJ recognized, however, that "[w]hile the claimant's care has been conservative, her history of requiring medications to control her mental illness is documented adequately." (Tr. at 44)

With respect to Dr. Faheem, the ALJ acknowledged that he opined Claimant's impairments met or equaled Listing 12.04 or 12.06 since his initial treatment with her, and observed that he evaluated Claimant under the old mental criteria governing the four broad areas of functioning. (Tr. at 44, 436-440) The ALJ also noted Dr. Faheem reported Claimant seemed guarded and withdrawn, and that he assessed Claimant had problems with functioning, holding a job, concentration problems in focusing, and in handling stress. (Id.) The ALJ determined Dr. Faheem's opinion was "of little persuasive value" because she found it was not supported by the record that showed Claimant received conservative treatment for her symptoms, or that it was consistent with Listing level severity. (Tr. at 45) In addition, the ALJ observed that Dr. Faheem did not address all Listing criteria under "paragraph A" and/or "paragraph C". (Id.) The ALJ also found Dr. Faheem's opinion inconsistent with Claimant's activities of daily living. (Id.)

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing *any gainful activity*, regardless of his or her age, education, or work experience." See 20 C.F.R. § 416.925(a) (emphasis added); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, Claimant must show that her combination of impairments is "equivalent" to a listed impairment, and she "must present *medical findings* equal in severity *to all the criteria* for the one most similar listed impairment." See Id. at 531 (emphasis added). Claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

Despite Dr. Faheem's opinion otherwise, the ALJ had determined at step three that Claimant's impairments did not medically equal or meet Listing criteria. (Tr. at 40) Although Claimant appears to contend that the ALJ failed to address which activities of daily living were

inconsistent with Dr. Faheem's opinion (see, ECF No. 18 at 16), it is clear that the ALJ repeatedly references Claimant's activities of daily living throughout the written decision. Indeed, with respect to Claimant's activities of daily living, the ALJ cited support for these findings in Claimant's application forms, her testimony, as well as the medical evidence submitted prior to the hearing in conclusion that Claimant's impairments failed to meet or medically equal Listing levels of severity. (Tr. at 40-41, 234-235, 258-265, 266-273, 293-300, 318-375, 441-449) In this case, the ALJ appropriately reconciled the conflicting evidence of record that included Dr. Faheem's conservative treatment of Claimant's mental health issues through medication, Claimant's limited employment at Hinton Newspaper, in addition to her living on her own and being the primary caretaker for her son, among other factors, and simply did not find sufficient evidentiary support that Claimant's impairments met Listing criteria. In short, the ALJ's analysis of Dr. Faheem's opinion complies with the standard set forth by current Regulations, and remand is unnecessary for further analysis.

Thus, while Dr. Faheem opined Claimant had problems "holding a job" or "handling employment" (Tr. at 438), it is clear that the ALJ determined otherwise, noting that "the evidence of the claimant's daily activities along with the medical evidence established that she has greater sustained capacity than she alleged, and that her subjective symptoms lack consistency with the evidence to the extent they purport to describe a condition of disability for Social Security purposes." (Tr. at 45) Accordingly, the undersigned **FINDS** the ALJ's consideration and assessment of Dr. Faheem's opinion is supported by substantial evidence.

The RFC Assessment and Accounting for Impairments in Concentration:

Finally, Claimant contends the ALJ erred by failing to incorporate Claimant's limitations

in concentration into the RFC, or to explain why such inclusion was not merited, therefore resulting in an RFC determination unsupported by substantial evidence. (ECF No. 18 at 9-13, 16-17)

A claimant's RFC represents the *most* that the individual can do despite her limitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite her impairments. 20 C.F.R. § 416.945(a). The RFC determination is an issue reserved to the Commissioner. Id. § 416.946(c).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted); see also Felton-Miller v. Astrue, 459 F. App'x at 231.

As noted herein, the ALJ recognized the consistent notations of Claimant's impairments in concentration which were documented by the medical and other evidence of record, but nevertheless determined that Claimant had only moderate limitations in concentrating, persisting, or maintaining pace:

> On her Function Report form, the claimant reported that she had problems with concentration and completing tasks; however, she admitted that she lived in an apartment on her own and she was able to care for her child, take him to school and medical appointments, manage finances, pay bills, handle a savings account, handle a checkbook, drive, shop, cook, perform household chores, and maintain hygiene and grooming. She has worked two-hours per day at Hinton Newspaper since 2016 performing scanning and typing activities. As such, the record supports that she

retains the capacity to perform simple, routine, and repetitive work that is not at an assembly line or production rate pace.

(Tr. at 40-41, 234-235, 258-265, 266-273, 293-300)

It is significant that the Fourth Circuit recently held that there is no "categorical rule" that an ALJ must "always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). Of further interest here, is while Claimant properly points out that "the ability to perform simple tasks differs from the ability to stay on task" (see, ECF No. 18 at 16, citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), the Fourth Circuit also recognized that an adjudicator "can explain" why a "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [a] residual functional capacity." Id. In this case, the ALJ clearly addressed all the relevant evidence concerning Claimant's limitations in concentration, and accommodated same in the RFC assessment by limiting her to "simple, routine, repetitive work that is not an assembly line or production rate pace" and further restricted Claimant to "a few changes in the work environment, which [the ALJ] define[d] as 3-4 changes per workday or work shift."[10] (Tr. at 41) The ALJ also articulated her reasons supporting the nonexertional restrictions in the RFC by citing to specific facts from the record; accordingly, the undersigned **FINDS** that the ALJ appropriately and with sufficient explanation, accounted for Claimant's impairments in concentration.

---

[10] With regard to the ALJ's placing the additional restriction to just a few changes in the work environment, the ALJ made this determined based on her finding Claimant had only moderate limitations in adapting or managing oneself, on account that Claimant: did not work more than two hours per day; that she works for her mother at Hinton Newspaper; that she works alone; that she requires assistance with her son one or two times a month, when her sister will have to take him to school during these times; that she experienced "one period of decompensation in 2015 that she related to an adverse reaction to medication changes"; that Claimant moved out of her mother's home and lives in apartment with her son; that she is able to care for her son, take him to school and to medical appointments, and assist with his homework; that she can clean her home, cook, manage her finances, drive, and shop. (Tr. at 41, 258-265, 266-273, 293-300, 318-375).

With regard to the RFC assessment in general, the ALJ's analysis is reasonable, as she provided a logical explanation for her conclusions by relating it to the evidence before her. See, Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). Further, contrary to Claimant's contention that the ALJ provided no explanation for her conclusions as to her ability to work a full workday, it is apparent that the ALJ made explicit, if not repeated, findings concerning Claimant's limitations in completing a full workday, and repeatedly discussed her limited employment at Hinton Newspaper to the extent that she only worked two hours a day doing scanning and typing duties; in addition, the ALJ also expressly acknowledged that Claimant's mother supervised Claimant at work because if she "did not watch her closely, she would be unable to handle her job." (Tr. at 43, 441-449) Moreover, the ALJ noted Dr. Faheem's opinion that Claimant "had problems with functioning" as well as "holding a job." (Tr. at 44, 436-440) However, unlike the adjudicator in Thomas, the ALJ in this case not only discussed the relevant mental health treatment records and other evidence of record concerning Claimant's employment situation, but she also expressly provided her conclusions, based on the record, with specific factual findings to support those conclusions.

In addition, despite Claimant's assertion that the ALJ "gave no significant consideration to the persistent observations of impairment to her attention and concentration" and "provides no explanation for little more than passing mention of those observations" (see, ECF No. 18 at 11), the ALJ *did* give considerable attention to these issues, beginning at step three in the sequential process analysis, and especially in the RFC assessment. (Tr. at 40-44) As noted *supra*, the ALJ thoroughly considered Claimant's allegations in her Function Reports, her testimony, the mental health treatment evidence, and the opinion evidence of record, including, but not limited to, Dr.

Faheem's opinion. Outside of the omitted records that were not submitted prior to the ALJ's written decision, Claimant does not specify what additional evidence would have been critical to the ALJ's RFC analysis. While Claimant suggests that the ALJ first fashioned the RFC, and then provided a "post hoc justification" for same (see, ECF No. 18 at 12), there is just no evidence this happened and warranting remand. The ALJ provided a specific and thorough explanation for the RFC assessment in light of Claimant's limitations in each of the four broad areas of functioning based on the evidence of record at the third step. (Tr. at 40-41) Thus, the ALJ clearly did not render the RFC first, and then provide a function-by-function analysis.

Finally, with respect to Claimant's argument that the ALJ's limiting her to "not an assembly line or production rate pace" without sufficient explanation, as these terms are inadequate for judicial review (see, ECF No. 18 at 12), it is necessary to examine why the Thomas court took issue with the terms "no production rate or demand pace." Thomas, 916 F.3d at 312-313. The Fourth Circuit emphasizes that when an adjudicator uses such terms, it is helpful that there is some additional context to explain what the ALJ means. Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017). Indeed, as pointed out by the Commissioner, numerous courts throughout this Circuit[11] have held that where an ALJ, as is the case here, further describes an RFC limitation

---

[11] See ECF No. 20 at 13-14; citing Brian S. v. Saul, 2021 WL 748087, at *12 (E.D. Va. Feb. 10, 2021), *report and recommendation adopted sub nom.*, 2021 WL 744149 (E.D. Va. Feb. 25, 2021) (refusing to remand and holding that the court could "understand the phrase 'production rate pace,' " when "[u]nlike the ALJ in Thomas, the ALJ here followed 'production rate pace' with further description: 'as that found in an assembly-line setting and with instructions that were primarily spoken rather than written'); Sheri S. v. Saul, 2020 WL 4579871, at *4 (D. Md. Aug. 7, 2020) (holding that by including the description "e.g. assembly line work" immediately after the term "production-rate pace," "the ALJ presented a logical bridge to support how the use of the phrase 'production-rate pace' accounted for Plaintiff's ability to perform work"); Roman T. v. Saul, 2020 WL 4233104, at *6 (W.D. Va. Mar. 19, 2020), *report and recommendation adopted*, 2020 WL 4227561 (W.D. Va. July 23, 2020) (when the ALJ clarified in the hypothetical question presented to the VE, that he should " 'eliminate those jobs that have a strict production rate or pace requirement whether that's keeping up with a factory assembly line or having to make a certain number of widgets every hour or day,' " the ALJ provided sufficient explanation to allow meaningful review); Nelson v. Saul, WL 4748028, at *5 (E.D.N.C. Aug. 29, 2019), *report and recommendation adopted*, 2019 WL 4747048 (E.D.N.C. Sept. 27, 2019) (distinguishing Thomas and Perry and holding that the court was "not left to guess what the ALJ meant"

to "simple, routine, repetitive work that is not an assembly line or production rate pace", this is sufficient explanation for the limitation allowing for meaningful review.

In short, the ALJ's narrative of the record included the objective medical and other evidence of record, including Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and her ultimate determination that Claimant remained capable of substantial gainful activity despite her impairments in attention and concentration, provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d at 636. In other words, the ALJ discharged her duty in building " 'an accurate and logical bridge from the evidence to [her] conclusion[]' "[12], where this Court is not "left to guess about how the ALJ arrived at [her] conclusions", therefore remand is not necessary. Id. at 637. Accordingly, the undersigned **FINDS** that the ALJ's RFC assessment with regard to Claimant's impairments in concentration is based upon substantial evidence.

Finally, the undersigned further **FINDS** that the ALJ's analysis of the evidence of record, and the final decision denying Claimant's applications for benefits are also supported by the substantial evidence.

## <u>Recommendations for Disposition</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 17), **GRANT** the Defendant's request to

---

when the ALJ limited the plaintiff to "non-production rate or paced-rate work (such as would be done on an assembly line)").

[12] See <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (quoting <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000)).

affirm the decision below (ECF No. 20), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 21, 2021.



Omar J. Aboulhosn
United States Magistrate Judge